[Crim. No. 42532. Second Dist., Div. Three. May 4, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
RICHARD MORTON GILMAN et al., Defendants and Appellants.

**[Opinion certified for partial publication.*]**

---

*At the direction of the court, and pursuant to California Rules of Court, rules 976 and 976.1, the portion of the opinion certified for publication follows.

**COUNSEL**

Paul Arthur Turner,† Russell Iungerich, Jack Oswald and Corinne S. Shulman, under appointments by the Court of Appeal, for Defendants and Appellants.

John K. Van de Kamp, Attorney General, Edward T. Fogel and Donald E. De Nicola, Deputy Attorneys General, for Plaintiff and Respondent.

†Paul Arthur Turner was relieved as counsel of record for appellant Gilman upon his appointment as a judge of the Los Angeles Municipal Court.

**OPINION**

**FIDLER, J.*—**

### STATEMENT OF THE CASE

The District Attorney of Los Angeles County filed a four-count information against each appellant.[1] Count I alleged a violation of Penal Code sections 187 and 190.2, subdivisions (a)(1), (a)(18), murder with the special circumstances of torture and for financial gain; count II alleged a violation of Penal Code section 203, mayhem; count III alleged a violation of Penal Code section 244, assault with a caustic substance; and count IV alleged a violation of Penal Code section 182, conspiracy to commit the offenses set forth in counts I through III. Each count also alleged that the appellants had inflicted great bodily injury upon their victims within the meaning of either Penal Code sections 1203.075 or 12022.7. Appellants entered not guilty pleas and denied the special allegations.

Appellants each made motions to suppress certain statements, motions to sever and motions pursuant to Penal Code section 995. Appellant Gilman's trial counsel also made numerous requests to be relieved, to have additional counsel appointed and to have the matter continued. All motions were denied.

The district attorney elected not to pursue the death penalty. Two juries were impaneled to hear the case. Jury selection commenced on January 21, 1982, and took one month to complete. The actual trial consumed two months of court time. At the close of the People's case-in-chief, the court directed a verdict of acquittal as to the special circumstances allegations. Appellants were convicted of each count. Appellant Gilman's jury found the object of the conspiracy in count IV to have been mayhem. Appellant Robinson's jury found the objects of the conspiracy to have been both mayhem and assault with a caustic substance. Additionally, the great bodily injury enhancement in count IV was found to be true as to appellant Robinson.

Probation was denied as to each appellant. Appellant Robinson was sentenced to state prison on count I for a term of 25 years to life. The upper terms in counts II, III and IV were imposed, plus the enhancement in count IV, but were then stayed pursuant to Penal Code section 654. Appellant

---

*Assigned by the Chairperson of the Judicial Council.

[1]The trial of a third codefendant, Bobby Ray Savage, was severed from appellants' trial.

Gilman received the same sentence, with the exception of no enhancement as to count IV. Appellants filed a timely notice of appeal.

STATEMENT OF FACTS[2]

In early 1980, appellant Gilman had been engaged to and was living with the eventual victim in this matter, Patricia Worrell. Gilman was a law school graduate. Worrell was attending the same law school from which Gilman had graduated. In April of 1980, Gilman and Worrell were having problems with their relationship. They especially quarreled over a ring Gilman had given to Worrell. They broke off their engagement, although they continued to see each other socially.

In late July of 1980, Gilman met Kim Bricker, a prostitute, in Las Vegas. He told her he was looking for a "hit man" to beat up a girl in Los Angeles. Bricker indicated she knew someone who would be interested in doing such a job, and arranged a conversation between Gilman and Bobby Savage. Savage was Bricker's pimp, and also worked as a "bounty hunter" for a bail-bondsman.

Gilman later told Bricker that he had met with Savage. The next night Savage showed Bricker $750 he had received from Gilman as part payment for doing a "job on this girl."

Savage paid $200 to Bobby Davis, an employee of a rental car company, to drive him to Los Angeles. When they arrived in Los Angeles they went to Ms. Worrell's home on three occasions, but each time Savage only stayed around the entrance to the home for a short while.

Savage then returned to Las Vegas and told Bricker he had not done the job because Ms. Worrell had house guests. Savage had a can of lye in his possession and he told Bricker to be careful with it.

In mid-August Savage telephoned Gilman and then put appellant Robinson on the line. Robinson demanded an extra $1,000 for the job. Gilman eventually agreed to the increase in money and told Robinson he wanted them to throw lye or acid on Ms. Worrell. Gilman also told Savage and Robinson to rough Gilman up too, to make it "look good."[3]

---

[2]Not all of the evidence was presented to both juries. However, for the sake of clarity and brevity we present the facts so as to show the "overall picture" of what took place. Where appropriate we will comment on evidence presented to only one jury.

[3]Evidence was introduced which showed that Gilman had attempted to hire someone to maim and disfigure another girl friend in 1979.

On August 14, 1980, while Gilman and Ms. Worrell played cards at her home, and while her son lay asleep in another room, Robinson and Savage knocked on her door. When Ms. Worrell opened the door Savage threw lye on her face. Gilman and Ms. Worrell's son drove her to the hospital. Ms. Worrell was crying and screaming in pain.

Ms. Worrell's upper body and face were severely disfigured by the lye. She was blinded in her left eye. Some of the lye entered her mouth, burned through her esophagus and eventually burned through her left subclavian artery. This eventually caused a massive hemorrhage that caused her death on August 24, 1980. According to medical testimony presented at trial, the expected death rate for injuries similar to those suffered by Ms. Worrell would have been 5 percent.

Scientific, documentary and eyewitness testimony linked each appellant to the crime. When Robinson was interviewed by the police in December of 1980, he admitted committing the crime with Savage, having done so at Gilman's request.

ISSUES*

. . . . . . . . . . . . . . . . . . . . . . .

## XII

Robinson contends that his conviction must be reversed because the jury was given erroneous instructions as to the intent necessary to convict someone as an aider and abettor, in light of the California Supreme Court's decision in *People v. Beeman* (1984) 35 Cal.3d 547 [199 Cal.Rptr. 60, 674 P.2d 1318].

The instructions submitted to the jury in this matter did not require the jury to find that an aider and abettor shared the criminal intent of the perpetrator. In *Beeman* the court held that to be liable as an aider and abettor a person must have rendered aid "with an intent or purpose of either committing, or of encouraging or facilitating, commission of the target offense." (*People v. Beeman, supra,* 35 Cal.3d 547, 551.)

In *Beeman* the court resolved conflicting lower court opinions (e.g., *People v. Yarber* (1979) 90 Cal.App.3d 895 [153 Cal.Rptr. 875]; *People v. Ott* (1978) 84 Cal.App.3d 118 [148 Cal.Rptr. 479]). It did not establish a new

*See footnote, *ante,* page 760.

rule or standard. Therefore, no issue of retroactivity arises, and the opinion is to be applied retroactively. (See *Donaldson* v. *Superior Court* (1983) 35 Cal.3d 24 [196 Cal.Rptr. 704, 672 P.2d 110]; *People* v. *Darwiche* *(Cal.App.).*.)

Robinson urges us to find that he is entitled to a per se reversal of his conviction because of the *Beeman* error, relying on the cases of *Connecticut* v. *Johnson* (1983) 460 U.S. 73 [74 L.Ed.2d 823, 103 S.Ct. 969]; *Sandstrom* v. *Montana* (1979) 442 U.S. 510 [61 L.Ed.2d 39, 99 S.Ct. 2450]; and *In re Winship* (1970) 397 U.S. 358 [25 L.Ed.2d 368, 90 S.Ct. 1068]. He argues that by not requiring the jury to find an aider and abettor shared the same criminal intent as the perpetrator, an essential element was removed from their consideration, thereby violating his due process rights. He also argues that the jury was in effect considering instructions that were equivalent to the giving of a conclusive presumption on guilt, thereby eliminating the presumption of innocence, which violates the holding in the *Sandstrom* case, or were not asked to consider intent at all.

A recent case, *People* v. *Darwiche, supra,* (Cal.App.), held that *Beeman* did not address any constitutional issues, and, therefore, the proper standard of review is under *People* v. *Watson* (1956) 46 Cal.2d 818 [299 P.2d 243]. We must disagree with *Darwiche,* insofar as it concludes that *Beeman* fails to address any constitutional issues. The court in *Beeman* did not reach the constitutional issues, but clearly recognized that error of the type found in *Sandstrom* raised issues of constitutional dimensions.[9]

We are not persuaded that a per se reversal is required where *Sandstrom* error is present. Even assuming arguendo that error under *Beeman* is equivalent to error under *Sandstrom,* we can resolve the issue before us whether we apply the *Watson* test, or use the *Chapman* standard.

Under the facts presented to us, we are satisfied that the omission in not giving the instructions required by *Beeman* was harmless beyond a reasonable doubt and did not contribute to the verdict reached. This is the standard required by *Chapman* v. *California, supra,* 386 U.S. 18, and is stricter than the standard applied under *Watson.* In using this as our guideline, we do not necessarily decide that error under *Beeman* requires review under *Chapman.*

---

*Reporter's Note: Hearing granted May 24, 1984 (Crim. 23737).

[9]In *Connecticut* v. *Johnson, supra,* 460 U.S. 73, the Supreme Court split four to four on the question of whether error under *Sandstrom* is reversible per se, or is reviewable under the standard of *Chapman* v. *California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824, 24 A.L.R.3d 1065]. (See also *People* v. *Beeman, supra,* 35 Cal.3d 547, 561 at fn. 4.)

In the instant case, the jury specifically found that Robinson had the specific intent to commit mayhem as a conspirator. CALJIC No. 6.10 specifically requires this specific intent, and Robinson was convicted of the conspiracy, with the objects of the conspiracy being both mayhem and assault with a caustic substance. The omissions in not giving the proper instructions under *Beeman* were thereby resolved adversely to Robinson under other properly given instructions. (See *People* v. *Sedeno* (1974) 10 Cal.3d 703, 721 [112 Cal.Rptr. 1, 518 P.2d 913].) (See also *People* v. *Beheler* *(Cal.App.).)

Under the other instructions submitted to them the jury did ascertain the intent of Robinson, and resolved that issue adversely to him. (*Sandstrom* v. *Montana, supra,* 442 U.S. 510.) The missing element of intent was filled in by the giving of CALJIC No. 6.10, *supra.* The People have proved beyond a reasonable doubt every fact necessary to constitute the crime charged. (See *In re Winship, supra,* 397 U.S. 358.)

The evidence is overwhelmingly clear in this matter that Robinson at the very least knew the full extent of Savage's criminal purpose, and aided and encouraged him with the intent and purpose of facilitating his commission of mayhem on Ms. Worrell. His liability extends to the natural and reasonable consequences of the act he knowingly and intentionally aided and encouraged. (*People* v. *Beeman, supra,* 35 Cal.3d 547, 560.) The jury so found under all of the instructions submitted to them.

## XIII†

. . . . . . . . . . . . . . . . . . . . . .

## XIV

### DISPOSITION

Appellants were fairly tried and convicted of an extremely vile, cruel and dastardly act. The judgments are affirmed.

Klein, P. J., and Lui, J., concurred.

Appellants' petitions for a hearing by the Supreme Court were denied July 26, 1984.

---

*Reporter's Note: Deleted on direction of Supreme Court by order dated May 17, 1984.
†See footnote, *ante,* page 760.