Opinion
WOODS, J.
In this retrial for crimes committed in 1980, a jury convicted appellant of first degree murder (Pen. Code, § 187; count I) (statutory references, unless otherwise noted, are to the Penal Code), mayhem (§ 203; count II), assault with chemicals (§244; count III), and conspiracy (§ 182; count IV).
Appellant contends the trial court (1) abused its discretion in refusing to appoint William Genego as his attorney, (2) erred by refusing to allow Shauna Weeks to act as appellant’s advisory counsel, (3) erred in telling appellant if he chose to represent himself he could not reassert his right to counsel, (4) erred in allowing the prosecutor to question appellant about statements obtained in violation of Miranda, and (5) erred in answering the jury’s question about a great bodily injury allegation.
We find all but appellant’s last contention without merit and affirm the judgment.
Factual and Procedural Background
There being no insufficiency of evidence claim, the facts may be stated simply. Our perspective favors the judgment. (People v. Barnes (1986) 42 Cal.3d 284, 303-304 [228 Cal.Rptr. 228, 721 P.2d 110].)
In 1980 Patricia Worrell was in her last year of law school and, with her 13-year-old son William, lived in Sylmar, California. At school, she had met and became engaged to Richard Gilman but sometime before August 1980, against his wishes, she ended their six-month relationship.
A short time later, Gilman met a prostitute in Las Vegas and asked if she knew someone who would beat up his former girlfriend. Kim Bricker, the prostitute, recommended her pimp, Bobby Ray Savage.
*274 Savage called Gilman and agreed to beat up or disfigure Patricia Worrell for $1,500. Gilman gave him an advance of $750.
Savage asked Robert Davis to rent a car and the two drove to California. They found Patricia Worrell’s house, parked, and Savage walked to the house. He returned to the car and told Davis there were too many people in the house.
Savage and Davis then drove to Hollywood, went to a nightclub, talked to a nude dancer named Corey, and the three of them drove back to Las Vegas.
Gilman, impatient the job had not been done, repeatedly called Kenney’s Bail Bonds, where Savage worked, and left threatening messages for Savage.
Apprehensive about Gilman’s threats, Savage told a new acquaintance, appellant, about the “job.” Appellant said he would do it. Appellant telephoned Gilman and for $1,000 agreed to disfigure Patricia Worrell by throwing lye in her face.
Appellant and Savage bought a can of drain cleaner in crystal form, poured it into a glass jar, and added water. On August 14, 1980, appellant rented a car and he and Savage drove to Sylmar. They arrived at Patricia Worrell’s house about 10:30 p.m. and saw a car parked in the driveway.
Savage told appellant he would turn on the parked car’s lights so appellant could get the victim to open the front door.
Inside the house, Patricia Worrell and Gilman were playing cards in the living room. William was in bed asleep.
When she and Gilman heard the knock at the door, Gilman told Patricia Worrell to answer it. She went to the door and asked who was there. When told her car lights were on she opened the door and saw a Black man in his 20’s, appellant, who threw a burning liquid in her face.
She fell to the floor screaming. Gilman helped her to the shower, woke William, and drove the three of them to the hospital. The lye burned her face, blinded her right eye, ate through her esophagus, and 10 days later, caused her death.
Appellant and Savage returned to Las Vegas, went to Savage’s motel room and, in Kim Bricker’s presence, talked about what had happened.
In 1982, Gilman and appellant were tried and convicted of first degree murder and other crimes against Patricia Worrell. Their convictions were *275 affirmed on appeal (People v. Gilman (1984) 156 Cal.App.3d 760 [203 Cal.Rptr. 6]), and the California Supreme Court denied appellant’s petition for review.
Savage was separately tried and convicted of first degree murder and related offenses.
Appellant sought habeas relief from the superior court and Court of Appeal. His petitions were denied. Appellant’s federal habeas corpus petition was denied by the district court but granted by a divided Ninth Circuit Court of Appeals (Robinson v. Borg (9th Cir. 1990) 918 F.2d 1387).
Prior to the instant July 1994 retrial, appellant sought to have William Genego appointed as his attorney. The trial court (Superior Court Judge Leon S. Kaplan) declined the request and appointed other counsel. Appellant filed a petition for a writ of mandate with this court which, on October 27, 1992, we denied. (Robinson v. Superior Court (Oct. 27, 1992) B069083 [nonpub. opn].)
Before trial, appellant’s request to represent himself was granted.
Following his conviction appellant filed the instant appeal.
Discussion
1. Appellant contends the trial court abused its discretion in refusing to appoint William Genego as his attorney.
Appellant contends that Superior Court Judge Leon S. Kaplan[1] abused his discretion when, on July 9, 1992, he refused to appoint William Genego to represent him at his retrial.
Respondent asserts we are precluded from addressing the merits of this contention because our October 27, 1992, decision (Robinson v. Superior Court, supra, B069083) considered and rejected the identical claim and is, therefore, the law of the case. Respondent is mistaken.
Although we requested, received, and considered an opposition brief to appellant’s petition (Robinson v. Superior Court, supra, B069083) and denied the petition on the merits (“The petition is denied as petitioner has not demonstrated abuse of discretion") we did not issue an alternative writ nor *276 entertain oral argument. The rule is clear: “. . . the denial of a writ petition does not establish law of the case unless the denial is accompanied by a written opinion following the issuance of an alternative writ” (Kowis v. Howard (1992) 3 Cal.4th 888, 891 [12 Cal.Rptr.2d 728, 838 P.2d 250], italics added; see also People v. Medina (1972) 6 Cal.3d 484 [99 Cal.Rptr. 630, 492 P.2d 686].)
In considering the merits of appellant’s contention we apply the following legal standard.
“ ‘ “Judicial discretion is that power of decision exercised to the necessary end of awarding justice based upon reason and law but for which decision there is no special governing statute or rule. Discretion implies that in the absence of positive law or fixed rule the judge is to decide a question by his view of expediency or of the demand of equity and justice. . . . The term implies absence of arbitrary determination, capricious disposition or whimsical thinking. It imports the exercise of discriminating judgment within the bounds of reason. Discretion in this connection means a sound judicial discretion enlightened by intelligence and learning, controlled by sound principles of law, of firm courage combined with the calmness of a cool mind, free from partiality, not swayed by sympathy or warped by prejudice or moved by any kind of influence save alone the overwhelming passion to do what is just.” ’. . .
“It is well established that an indigent defendant, even in a capital case, may not force the trial court to appoint a particular attorney. . . . The additional fact that the requested attorney is willing and available to represent the defendant does not compel the appointment of the requested attorney. . . . Moreover, appointment of the requested attorney is not compelled because the defendant unexplainedly lacks confidence in and refuses to cooperate with any attorney other than the requested attorney . . . , or because the defendant has trust and confidence in the requested attorney. . . . However, these subjective factors should be taken into account by the trial court in exercising its discretion. . . .
“In exercising its discretion, the trial court should take into account not only the foregoing subjective factors, but also objective factors such as previous representation of defendant by the requested attorney in the underlying or in any other proceeding, any extended relationship between defendant and the requested attorney, the familiarity of the requested attorney with the issues and witnesses in the case, the duplication of time and expense to the county of appointing an attorney other than the requested attorney, and the timeliness of the request. ...” (Alexander v. Superior Court (1994) 22 Cal.App.4th 901, 915-916 [27 Cal.Rptr.2d 732], citations omitted.)
*277 We conclude, as we did four and a half years ago, prior to the instant retrial, that Superior Court Judge Leon S. Kaplan did not abuse his discretion in not appointing William Genego to represent appellant.
The trial court fully considered the motion to appoint Mr. Genego, conducted a hearing, elicited the qualifications of Mr. Genego and other attorneys, and made findings of fact.
The trial court stated: “I’ve heard all of the representations made to the court under oath and I am making a finding of fact based on credibility. I disbelieve Mr. Robinson’s statements and I believe the statements by Mr. Calabria [defense counsel at his first trial]. I believe at the time Mr. Calabria was fully qualified to represent Mr. Robinson, that he did so with a great degree of thoroughness and with a great degree of preparation and clearly an intensive consultation with the client and assertion by Mr. Robinson to the contrary I believe are lies. So were Mr. Calabria available for appointment, I would follow it as what has been the practice of my court to appoint a person, to reappoint the person who represented the defendant at trial. Mr. Calabria indicates that he is not available, and furthermore that he does not want to do it.”
As to Mr. Genego’s experience, it was primarily academic and appellate. He had “handled” cases in the District of Columbia but “did not conclude a jury trial on those cases.” When asked, “In California, how many felony cases have you taken to jury trial?” he responded, “I’ve not taken any felony trial juries in the State of California in the state court.” When asked how many felony cases he had tried in federal court, he estimated “approximately three cases” and did not claim any of the three were jury trials.
The trial court explained, “[Mr. Genego does not have] trial experience to justify . . . appointment in a case as serious as this one .... Mr. Genego while he has some criminal experience, when specifically asked how many murder cases he had handled, he informed the court he never handled a murder case .... I don’t think he possesses the necessary experience as a trial attorney to be involved in the representation of a case as serious as this one.”
Additionally, we note that Mr. Genego’s relationship with appellant had been only as a supervisor of Ms. Weeks, the (then) law school student who directly handled appellant’s successful petition for a writ of habeas corpus. Mr. Genego had not represented appellant “in [a] related prosecution[ ]” (Harris v. Superior Court (1977) 19 Cal.3d 786, 797 [140 Cal.Rptr. 318, 567 P.2d 750]) nor, apparently, had any personal contact with prosecution or defense witnesses.
*278 We find, in not appointing William Genego to represent appellant, the trial court did not abuse its discretion. (Drumgo v. Superior Court (1973) 8 Cal.3d 930 [106 Cal.Rptr. 631, 506 P.2d 1007, 66 A.L.R.3d 984]; see 5 Witkin & Epstein, Cal. Criminal Law (2d ed. 1989) §§ 2745-2747, pp. 3311-3316.)
2. Appellant contends the trial court erred by refusing to allow Shauna Weeks to act as appellant’s advisory counsel.
Appellant states “[t]he court’s error [in not appointing Mr. Genego] . . . was compounded by the court’s erroneous refusal to allow Ms. Weeks to assist appellant as advisory counsel.” Appellant is mistaken. There was no “erroneous refusal" because there was no refusal.
To recapitulate. Ms. Weeks, while a law school student, handled appellant’s petition for a writ of habeas corpus. Some years later, when the petition was granted, she was an attorney in a large civil law firm. She then filed a motion in superior court to have her former law school supervisor, William Genego, appointed to represent appellant. When the trial court instead appointed John Myers to represent appellant, the court also appointed Ms. Weeks “as associate counsel” to Mr. Myers. Sometime thereafter, when appellant’s motion to represent himself was granted, the trial court relieved both appointed attorneys, Mr. Myers and Ms. Weeks. Before doing so, the trial court made sure appellant understood. (“The Court: If you go propria persona, you should understand clearly that that means you want both, all your lawyers to be relieved. [H Is that correct? [‘JO The defendant: That’s correct.”)
Appellant did not request an advisory counsel and the trial court did not refuse him one. As we have said, “ ‘When a defendant requests appointment of advisory counsel, a court’s failure to exercise its discretion is serious error and its denial of a request . . . may constitute an abuse of discretion.’ ” (People v. Walton (1996) 42 Cal.App.4th 1004, 1017-1018 [49 Cal.Rptr.2d 917], italics added.) Absent such a request, a trial court has no duty “to make a record” explaining why it has not appointed advisory counsel.
3. Appellant contends the trial court erred in telling him if he chose to represent himself he could not reassert his right to counsel.
Appellant’s claim is based upon the following remarks by the trial court:
“Mr. Robinson, I am inclined to let you represent yourself if that’s what you wish to do. However, to protect your own interest, I’m going to make a *279 suggestion to you. You can either agree to it or not agree to it. And that is that Mr. Myers give you a copy of the transcripts, and you take a look at those and think about whether or not you really want to represent yourself in light of all you’ll be getting into.
“Would you like to proceed that way or you want to start representing yourself right now? But I should tell you if you represent yourself and you agree to do that, we’re not going to go back the other way. [Italics added.]
“What would you prefer?”
Appellant contends the trial court misled him because had he known he was allowed to change his mind, he would have asked that counsel be reappointed. We are not persuaded.
We view the italicized sentence as no more than an admonition that a request for self-representation is serious, not one to be lightly made or granted, and, as in this case, if granted, one that causes substantial delay. In fact, there was substantial delay. The self-representation motion was granted August 30, 1993, and the retrial did not begin until June 29, 1994.
At no time during these 10 months, nor during the lengthy trial, did appellant refer to the italicized sentence or seek to change his pro se status.
Appellant’s contention is similar to the one considered and rejected in People v. Gallego (1990) 52 Cal.3d 115 [276 Cal.Rptr. 679, 802 P.2d 169]. There also, a trial court concerned about the dangers of self-representation and delay advised the defendant “. . .he would not be able to stop the case in the middle of trial by announcing that he had changed his mind and wanted a lawyer.” (Id. at p. 159.)
We find no error.
4. Appellant contends the trial court erred in allowing the prosecutor to question him about statements obtained in violation of Miranda.
To consider appellant’s claim it is necessary to augment the factual and legal background.
Some months after the murder, appellant was arrested and questioned. The questioning lasted four and a half hours and was tape-recorded. At the outset, appellant was advised of and waived his Miranda rights. Then, for a time, appellant made exculpatory statements. Later, appellant made a comment about getting a good lawyer and making a phone call. (Robinson v. *280 Borg, supra, 918 F.2d 1387.) Still later, appellant confessed. At his first trial, appellant’s confession was admitted into evidence.[2] His conviction was affirmed on appeal. (People v. Gilman, supra, 156 Cal.App.3d 760, 766.)
Six years later, a divided federal court of appeals held appellant had invoked his right to counsel during the four-and-one-half-hour interview and all his statements thereafter, including his confession, were inadmissible. (Robinson v. Borg, supra, 918 F.2d 1387.)
Prior to his retrial, appellant filed a scholarly nine-page motion to preclude use of his statements substantively or for impeachment.
The motion accurately described the law: Harris v. New York (1971) 401 U.S. 222 [28 L.Ed.2d 1, 91 S.Ct. 643] permitted statements obtained in violation of Miranda to be used for impeachment; People v. Nudd (1974) 12 Cal.3d 204 [115 Cal.Rptr. 372, 524 P.2d 844] agreed with Harris; People v. Disbrow (1976) 16 Cal.3d 101 [127 Cal.Rptr. 360, 545 P.2d 272] overruled Nudd and held such statements inadmissible for impeachment; in 1982, effective June 9, 1982, the people passed Proposition 8; People v. Smith (1983) 34 Cal.3d 251, 258 [193 Cal.Rptr. 692, 667 P.2d 149] held Proposition 8 applicable only to prosecutions for crimes committed on or after June 9, 1982; People v. May (1988) 44 Cal.3d 309, 311 [243 Cal.Rptr. 369, 748 P.2d 307] held Proposition 8 had abrogated the rule of People v. Disbrow.
Thus, although the trial was to occur in 1994, 12 years after Proposition 8 had abrogated Disbrow, because the crimes had been committed in 1980, the law of 1980, including Disbrow, applied.
Accordingly, the prosecution conceded appellant’s motion should be granted and the trial court so ruled.
In his opening statement the prosecutor made no reference to any statement by appellant.
During his case-in-chief the prosecutor called 21 witnesses. None were asked about any statement by appellant. But appellant, during his cross-examination of one of those witnesses, Kim Bricker, did elicit such a reference.
The thrust of appellant’s cross-examination was that Ms. Bricker had given three inconsistent statements to the police and her third, most damaging one, was coerced as a result of her being a three-month prisoner in the Van Nuys jail. This is the pertinent colloquy:
*281 “Q: Isn’t it true, Miss Bricker, that it was at that time during your forced stay at Van Nuys that your entire story about me and your involvement entirely changed?
“The Witness: My entire story about you? No. I gave—they played me a tape of you confessing."
Appellant objected. There was a sidebar conference at which the court indicated the answer might well be responsive but agreed to strike the answer and admonish the jury to disregard it. The court did both. Appellant sought no further admonition and did not move for a mistrial. Additionally, the court advised appellant “I’m going to remind you again, Mr. Robinson, that if you open up a door on the question and the witness gives you an answer that is technically responsive, you may be stuck with the response that you get.”
After this brief incident, the prosecutor called 17 witnesses and, 8 days later, rested. Appellant called three defense witnesses and then he, himself, testified. He began by discussing the events before and during the crime— denying he threw the acid or had any knowledge Savage intended to do so. But he did not stop there. He further testified: “After this incident had taken place, I had contacted the police. I had met with them and told them what had happened. They didn’t have a warrant out for me. They didn’t have to track me down. They didn’t have to hunt me down like I was a mad dog or something.
“And after I told them what I knew what Savage told me on the way back, it was at that time when they made the arrest with all the other people who was involved. It was at that time when I picked up Kim Bricker—I don’t think you recall her testimony where she had made a mistake where they played a statement of my confession. It was no confession. I told them what the hell happened, but, unfortunately, I was dealing with the Foothill Police Department. Well, they did what they had to do—
“The Court: Excuse me. Let’s approach, please.
“(The following proceedings were held out in the hallway:)
“The Court: Mr. Robinson, you’re—my understanding is that your prior conviction was reversed, at least in part, because the jury heard what purports—or what was purported to be a confession by you. You have now put that confession a[t] issue.
“Do you understand what we’re talking about here?”
*282 Appellant contends the trial court erred in allowing the prosecutor to question his testimony that he had not confessed to the police but had only “told them what the hell happened.”[3] Appellant relied on Disbrow and asserts there are no exceptions to its impeachment bar and there is no “opening the door” doctrine.[4] Appellant is mistaken on all counts.
In Walder v. United States (1954) 347 U.S. 62, 65 [74 S.Ct. 354, 356, 98 L.Ed. 503] Justice Frankfurter addressed this issue, stating:
“It is one thing to say that the Government cannot make an affirmative use of evidence unlawfully obtained. It is quite another to say that the defendant can turn the illegal method by which evidence in the Government’s possession was obtained to his own advantage, and provide himself with a shield against contradiction of his untruths. Such an extension of the Weeks doctrine would be a perversion of the Fourth Amendment.
“Take the present situation. Of his own accord, the defendant went beyond a mere denial of complicity in the crimes of which he was charged and made the sweeping claim that he had never dealt in or possessed any narcotics. Of course, the Constitution guarantees a defendant the fullest opportunity to meet the accusation against him. He must be free to deny all the elements of the case against him without thereby giving leave to the Government to introduce by way of rebuttal evidence illegally secured by it, and therefore not available for its case in chief. Beyond that, however, there is hardly justification for letting the defendant affirmatively resort to perjurious testimony in reliance on the Government’s disability to challenge his credibility.”
Walder has been accepted by California courts. (People v. Taylor (1972) 8 Cal.3d 174, 182-184 [104 Cal.Rptr. 350, 501 P.2d 918]; People v. Disbrow, supra, 16 Cal.3d 101, 108; People v. Davis (1966) 241 Cal.App.2d 51, 54 [50 Cal.Rptr. 215J; see also People v. Stanfill (1986) 184 Cal.App.3d 577, 581 [229 Cal.Rptr. 215] [“A defendant who takes the stand to testify in his own behalf waives the privilege against self-incrimination to the extent of all inquiries which would be proper on cross-examination and is subject to impeachment the same as any other witness.”]; People v. Shea (1995) 39 *283 Cal.App.4th 1257, 1267 [46 Cal.Rptr.2d 388] [If “ ‘the defendant first seeks to mislead a jury or minimize the facts . . .’he may properly be questioned further.”].)
In the words of Walder, appellant “was free to deny all the elements of the case against him” without risk of tainted impeachment. Appellant did more. Because he thought he could do so with impunity, appellant sought to mislead the jury by claiming he had not confessed to the police but instead had “told them what the hell happened.”
In such circumstances, the trial court did not err in allowing prosecutor cross-examination.
5. Appellant contends the trial court erred in answering the jury’s question about a great bodily injury allegation.
Count III, assault with caustic chemicals, alleged appellant had inflicted great bodily injury upon Patricia Worrell. (§ 12022.7.) The jury asked the trial court if that allegation required appellant to have personally inflicted such injury. The trial court said “no,” and the jury found the allegation true.
The trial court erred. (People v. Cole (1982) 31 Cal.3d 568, 579 [183 Cal.Rptr. 350, 645 P.2d 1182].) If the judgment reflected this enhancement error we would order it stricken. It does not. Since the judgment makes no reference to a section 12022.7 enhancement, there is nothing to correct.
Disposition
The judgment is affirmed.
Lillie, P. J., concurred.

The 1993 decision by Superior Court Judge Michael B. Hawrin (not to appoint Mr. Genego) is not substantively addressed by appellant.

Although appellant was jointly tried with Richard Gilman, there were two juries (People v. Gilman, supra, 156 Cal.App.3d 760, 762), and, presumably, only appellant’s jury heard his confession.

Although appellant also contends the trial court erred in striking his testimony after he refused to further answer the prosecutor’s questions, that contention is based upon the instant one.

See Mueller and Kirkpatrick, Modem Evidence (1995) section 1.4, pages 15-21 “Waiving Objections—Invited Error, Opening the Door" and section 6.61, pages 900-906, “Effect of Constitutional Restricts”; 1 McCormick on Evidence (4th ed. 1992) section 182, pages 753-761, “Exceptions to Exclusion (d) Use of Illegally Obtained Evidence to Impeach Testifying Defendant.”