Filed 5/23/13  P. v. Van Coutren CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>CHRISTOPHER VAN COUTREN,<br><br>    Defendant and Appellant. | B240800<br><br>(Los Angeles County<br>Super. Ct. No. NA087835) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Richard R. Romero, Judge.  Affirmed.

Robison D. Harley, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Paul M. Roadarmel, Jr., and Seth P. McCutcheon, Deputy Attorneys General.

_____

## INTRODUCTION

Appellant was charged in count 1 with driving under the influence of alcohol or drugs (Veh. Code, § 23152, subd. (a))[1] and in count 2 with driving while having a 0.08 percent or higher blood alcohol level (§ 23152, subd. (b)). It was further alleged that he had suffered three prior convictions pursuant to sections 23550 and 23550.5.

A jury found appellant guilty of count 1, but not guilty of count 2. In a bifurcated proceeding, the trial court found the prior conviction allegations true and then sentenced appellant to three years in the county jail.

Appellant contends the trial court (1) failed to instruct the jury on the defense of unconsciousness, (2) abused its discretion in admitting into evidence the results of his prior alcohol breath tests, and (3) erred by not striking his 2004 conviction for reckless driving because he purportedly did not receive proper advisements concerning the consequences of his plea. We find no error and affirm.

## FACTS AND PROCEDURAL BACKGROUND

### A.     *Prosecution Evidence*

Anthony Reisner was inside his home at Willow Street and Clark Avenue in Long Beach when he "heard an accident" at about 2:00 a.m. on January 4, 2011. Looking through a window, Reisner saw a car come around the corner onto his block making a lot of noise due to a damaged front tire. The car drove into a driveway and the engine shut off. Reisner called the police and then heard the car start up again. He walked out of his house to see if anybody was hurt. The car started again and headed down Willow. Reisner saw a "trail of parts" near the center divider and "a chunk of concrete missing out of the sidewalk."

Long Beach Police Sergeant Kurt Sine, who was on patrol, exited the police building on Lakewood Boulevard and "heard a loud screeching noise" and saw smoke coming from appellant's vehicle. Sine activated his lights and siren and pulled up behind

---

[1]     Further code references are to the Vehicle Code.

appellant's vehicle. It had two front flat tires which appeared to be shredded, and the right rear tire also looked shredded. Sine walked up to appellant's side window, which was lowered, and smelled an "extremely strong" odor of alcohol. Sine asked appellant what he was doing and appellant said something in a slurred speech. Sine then ordered appellant out of the car and had him sit on the curb. Sine then turned the investigation over to Officer Deleon, who had arrived on the scene with his partner.

Appellant selectively answered Deleon's questions in a "carefree" manner. Appellant "had this attitude like if it was just being a joke, this was an entire joke at this time, being very sarcastic with all the answers." Appellant did not lose consciousness or complain of any pain or injuries during the interview. He also refused to submit to a field sobriety test. Deleon believed appellant was intoxicated based on the fact that during his questioning appellant could smell the odor of alcohol coming from appellant's person and breath, his speech was slurred, and he had red bloodshot eyes. Based upon these facts, and that appellant would not cooperate with a field sobriety test, Deleon placed appellant under arrest.

Deleon transported appellant to the police booking facility. Before he administered a breath test, Deleon observed appellant for 20 minutes to make sure he did not "spit, vomit, throw up, or regurgitate any fluids from his mouth." Deleon then conducted the test with a portable breathalyzer called the Intoxilyzer 5000. Appellant blew into the machine "for a little bit" and then stopped, instead of the continuous 10 seconds instructed by Deleon. Appellant then said, "okay, I'm done," and refused to complete the test. Appellant's first blow in the breathalyzer produced a result of 0.20 percent breath alcohol concentration. Appellant refused to give a blood sample.

Criminalist Gregory Gossage testified for the prosecution as an expert in forensic alcohol analysis. He said the breathalyzer was working properly on the day appellant used it, and Grossage recreated the circumstances when appellant's breath was analyzed, resulting in a reading "of about a .20." Gossage testified that while alcohol brought into the mouth from the stomach can affect the breath test results, the 20-minute observation period before the test eliminates the issue of mouth alcohol. Based upon the test

3

conducted and the maximum contribution that mouth alcohol can have on a breath test, "it's very likely, almost beyond doubt that [appellant's] blood alcohol level in this case was certainly above a .08."

## B.    Defense Evidence

Evan Lightner testified that appellant went to his house on the morning of January 3, 2011.  At around noon, appellant was picked up by Dan Smith, appellant's business partner.  Appellant and Smith returned to Lightner's house at about 11:45 pm.  Appellant had a pale face and "seemed to be a little quiet, not talking too much, and didn't seem to be feeling that good."  Smith left after about 20 minutes.  Lightner invited appellant to spend the night because appellant "didn't look like he was doing too well" and was "coughing and sneezing."

Lightner gave appellant a "whiskey and water."  Appellant "had a couple [of] sips of the drink" and went into the bathroom.  He then came out and sat down on Lightner's couch.  Appellant had "another couple [of] sips" of his drink and left Lightner's house at about 1:00 pm on January 4.

Dan Smith testified that he and appellant had two "investor meetings" on January 3, 2011 from about 2:00 pm until 9:30 pm.  After the second meeting, Smith and appellant had dinner but no alcohol.  After dinner, Smith drove appellant to Lightner's house.  Appellant "looked a little paleish" and "was sneezing a lot, and his eyes were really watery."

Sarah Anderson, appellant's sister, testified that on two occasions "over ten years ago" she witnessed appellant get hit by a baseball in the head while playing baseball.  She also saw appellant faint on two occasions between 2008 and January 2011.

James Mesa, who knew appellant from "business dealings," testified that appellant was an honest person.

Darrell Clardy, an expert in forensic toxicology, testified that food in a person's stomach can delay alcohol absorption for up to six hours.  He also testified that mouth alcohol can be a significant factor in breath test results and, notwithstanding the test

4

recreated by Gossage, appellant's breath test result was not reliable without additional testing.

Dr. Richard Dauben, an expert in neurology, testified that on December 2, 2011 he performed a neurological exam on appellant. He said appellant had episodes of loss of consciousness probably due to vasovagal syncope (also called neurocardiogenic syncope), a condition that makes the heart slow down, the blood pressure drop, and a person lose consciousness. Dr. Dauben relied solely upon appellant's own representation of his past history in making his conclusion that appellant suffered from vasovagal syncope. The result of previous neurological and cardiology examinations, as well as an MRI, were normal. Appellant also had a "tilt test evaluation" to determine if he lost consciousness when his blood pressure dropped. The result was inconclusive. Dr. Dauben further testified a person who suffers from head trauma may momentarily lose consciousness and show symptoms of "post-concussion syndrome." Post-concussion symptoms, like confusion, can last a few minutes or maybe an hour or two after the head injury.

Appellant testified he was hit in the head "probably twice" while playing baseball when he was young. On another occasion, he was struck by a baseball bat. But he was never taken to the hospital. In 2007, appellant was in two motorcycle accidents in which he struck his head. But he was not hospitalized after either incident. Appellant said "a few years ago" he began experiencing fainting spells. He fainted twice in the past.

Appellant recounted the business meeting he had with Smith and some investors on January 3. He had dinner with Smith and did not consume any alcohol. Appellant began to experience "hot flashes" and Smith drove him to Lightner's house in Long Beach. Appellant was sneezing, coughing, dry-heaving, and felt like he was going to vomit. He started feeling nauseous after taking three "big sips" from a whiskey and water Lightner prepared, so he went to the bathroom and continued to dry-heave. While in the bathroom, he drank two doses of Nyquil because he felt sick. After he left the bathroom and had "a couple more sips" of the whiskey and water, appellant decided to leave.

While driving home, appellate felt sweaty and hot, and felt that his allergies were "kicking up." He got "the hot tunnel-vision flashes," and as he rolled down his window he felt something bad was going to happen. He then lost consciousness while at the wheel and woke up with police officers around him.

## DISCUSSION

### 1. *The Trial Court Did Not Err in Failing to Instruct the Jury.*

Appellant argues "[t]he sole defense theory was that defendant was unconscious while driving due to a head trauma and due to a syncopal episode," and therefore it was error when the trial court failed to instruct the jury regarding this theory. (See Pen. Code, § 26 [exempting criminal responsibility of persons committing the charged act "without being conscious thereof"].) We disagree.

A trial court has a duty to sua sponte instruct the jury if there is substantial evidence supportive of a defense and the defense is not inconsistent with the defendant's theory of the case. (*People v. Breverman* (1998) 19 Cal.4th 142, 154.) But the trial court does not have any obligation to present theories to the jury which the jury could not reasonably find to exist. (*People v. Wickersham* (1982) 32 Cal.3d 307, 324-325.) "An unconscious act within the contemplation of Penal Code section 26 is one committed by a person who is not conscious of acting and whose act cannot therefore be deemed volitional, that is, there is no functioning of the conscious mind." (*People v. Froom* (1980) 108 Cal.App.3d 820, 829.)

Appellant never presented any evidence that he was driving while unconscious rather than while under the influence of alcohol. While the evidence may have suggested that the accident occurred while appellant was driving and as a result of a medical disorder, appellant's offense was complete when he left Lightner's house, before the subsequent accident. Appellant testified that he remembered leaving Lightner's house, beginning his drive home, rolling down the window while driving, and driving down Clark Street. He admitted, "I do remember driving my car." Consequently, the fact

6

appellant may have lost consciousness while driving, and did not remember anything but that, is not dispositive. Appellant's inability to remember everything is not an evidentiary foundation for a sua sponte jury instruction on unconsciousness. (See *People v. Heffington* (1973) 32 Cal.App.3d 1, 10.)

Appellant further agues the trial court erred by instructing the jury pursuant to CALCRIM No. 2110 because it served to negate his defense of unconsciousness.[2] But as the People correctly point out, appellant has forfeited this claim because an objection was never made at trial. (See *People v. Virgil* (2011) 51 Cal.4th 1210, 1260.) Even if the claim were cognizable, it is without merit because nothing in the instruction precluded the jury from considering the defense theory that appellant lost his consciousness due to a medical disorder. When the instruction is read as a whole, it required the prosecution to

---

[2]    The instruction provided: "The defendant is charged in Count 1 with driving under the influence of an alcoholic beverage. To prove that the defendant is guilty of this crime, the People must prove that: 1. The defendant drove a vehicle; AND 2. When he drove, the defendant was under the influence of an alcoholic beverage.

A person is under the influence if, as a result of drinking or consuming an alcoholic beverage, his mental or physical abilities are so impaired that he is no longer able to drive a vehicle with the caution of a sober person, using ordinary care, under similar circumstances.

The manner in which a person drives is not enough by itself to establish whether the person is or is not under the influence of an alcoholic beverage. However, it is a factor to be considered, in light of all the surrounding circumstances, in deciding whether the person was under the influence.

An alcoholic beverage is a liquid or solid material intended to be consumed that contains ethanol. Ethanol is also known as ethyl alcohol, drinking alcohol, or alcohol. An alcoholic beverage includes wine, beer and whiskey.

If the People have proved beyond a reasonable doubt that the defendant's blood alcohol level was 0.08 percent or more at the time of the chemical analysis, you may, but are not required to, conclude that the defendant was under the influence of an alcoholic beverage at the time of the alleged offense.

In evaluating any test results in this case, you may consider whether or not the person administering the test or the agency maintaining the testing device followed the regulations of the California Department of Health Services.

If the defendant was under the influence of an alcoholic beverage, then it is not a defense that something else also impaired his ability to drive."

prove that drinking alcohol was a substantial cause of the impairment. In other words, if appellant's ability to operate his vehicle was impaired by momentary unconsciousness, and not by his intoxication, then he would not be guilty of the charge. The lengthy instruction does end with the following statement, "If the defendant was under the influence of an alcoholic beverage, then it is not a defense that something else also impaired his ability to drive." But contrary to appellant's assertion, this statement did not prevent the jury from considering defendant's level of consciousness.

2.      *The Trial Court Properly Admitted the Results of Appellant's Prior Breath Tests.*

During direct examination, appellant testified he drank the whiskey and water at Lightner's house, but that he "did not like alcohol so much." On cross-examination, the prosecutor asked appellant if it was true that he did not "like alcohol so much." Appellant reaffirmed he did not like alcohol and that he had not liked it his "whole life." The trial court then allowed the prosecutor to impeach appellant with evidence that on three prior occasions appellant drank alcohol and completed breath tests which resulted in high blood alcohol levels.[3] Appellant contends the trial court abused its discretion in allowing the prosecutor to elicit this impeachment evidence.

Generally, a party may not cross-examine a witness on irrelevant matters simply for the purpose of eliciting something to be contradicted. (*People v. Price* (1991) 1 Cal.4th 324, 436.) But this rule does not apply where the questions relate directly to relevant matters raised on direct examination. (*Ibid*.) The trial court has wide discretion in deciding the line between proper and improper cross-examination, and must exercise that discretion "to prevent unfairness to either side when one side presents evidence on a point, then tries to prevent the other side from responding." (*People v. Steele* (2002) 27 Cal.4th 1230, 1248.)

---

**3**      Appellant testified that he took breath tests in 2007 and 2010, which resulted in blood alcohol contents of .11/.12, and .09/.08, respectfully, and also ingested alcohol in 2004 which was the year of appellant's reckless driving involving alcohol conviction.

Appellant's direct examination sought to create the impression that he had a long standing aversion to alcohol, and that at most he drank a little whiskey and water at Lightner's insistence. Even appellant's trial counsel acknowledged that appellant was minimizing his conduct. Having voluntarily created this image, the prosecution was entitled to pursue that issue on cross-examination by impeaching the false image appellant created. (See *People v. Robinson* (1997) 53 Cal.App.4th 270, 283 [where defendant went beyond denying he had not confessed to police but rather tried to mislead the jury with other statements, the court properly allowed the prosecutor to question the defendant further about whether he had actually confessed].)

### 3. *The Trial Court Properly Admitted Appellant's Prior Conviction.*

Appellant argues that his October 2004 conviction for reckless driving should have been stricken because he was misadvised concerning the consequences of his plea. Specifically, appellant asserts he was not advised his conviction could be used in the future to enhance his sentence, and that he thought his driver's license would be suspended for 30 days and instead it was suspended for one year.[4] He claims he would not have entered into the plea had he known of the consequences. Appellant also contends the 2004 prior should have been stricken because there were factual errors in the guilty plea form in that it provided he was pleading guilty to section 23103.5, which is not a crime at all but merely a sentence enhancement. We are not persuaded.

#### A. *The Underlying Facts and Relevant Proceedings.*

The record shows that in September 2004, appellant was charged in San Diego with driving under the influence of alcohol (§ 23152, subd. (a)) and driving while having a measurable blood alcohol level (§ 23152, subd. (b)). On October 12, 2004, appellant entered into a plea agreement by which the two charges were dismissed in exchange for

---

[4] While the court suspended appellant's driver's license for one year, it eventually restricted his license for one year to driving to and from work, school, court-ordered activities, and in the course of employment.

appellant pleading to the reduced charge of reckless driving under section 23103, which was added to the complaint.[5]

The DUI addendum to the plea agreement warned that appellant's driver's license could by suspended for 30 days for the first offense and up to 6 months for the third offense. Yet, the traffic judgment minutes, signed by appellant's defense counsel on October 12, 2004, show appellant was present and that as a result of the plea, and pursuant to section 13202.5, appellant's right to drive would be suspended for one year.[6] The DUI addendum further advised appellant that pursuant to section 23103.5 his conviction for reckless driving "will act as separate conviction for driving under the influence" if he commits another DUI offense within 7 years. Appellant placed his initials next to this advisement.

The plea agreement shows appellant understood the consequences of his plea and discussed those consequences with his counsel, who also executed the agreement. In addition, the trial court questioned appellant and his counsel concerning the plea and found that appellant understood the nature of the charges and the consequences of his plea and admissions, and that there was a factual basis for the plea.

During the preliminary hearing in this case, appellant moved to strike the prior, asserting it was constitutionally invalid. The magistrate denied the motion, stating: "It was never set aside. He was well aware of the consequences, and could have easily gone

---

[5] The complaint was amended by interlineation on October 12, 2004, adding count three – the charge of "VC 23103(a) per 23103.5." The plea agreement appellant reviewed with his counsel and signed on October 12th stated, "I am pleading to a reduced charge and admit that I was driving a motor vehicle after ingesting alcohol."

Section 23103.5, subdivision (a), provides that the prosecution may agree to a plea of reckless driving in satisfaction of, or as a substitute for, a charge of driving under the influence pursuant to section 23152. The court's acceptance of such a plea renders the conviction a "prior offense" under section 23550 (and other provisions) if the prosecutor indicated on the record that the defendant ingested alcohol in connection with the offense, as in this case. (§ 23103.5, subd. (c).)

[6] Section 13202.5 provides that for each conviction of a person that is under 21 years of age for violating "section 23103 when subject to section 23103.5," the court must suspend that person's driving privilege for one year.

in and sought for his plea to be withdrawn. [¶] I find he was also – even though it doesn't appear he initialed these pages, there is a page that shows him the consequences of a plea – a DUI addendum that defense counsel submitted in his own moving papers, which was part of the plea disposition agreement. [¶] So there was some information there that he could have known his license would have been suspended. If DMV is wrong, and shouldn't have suspended his license for one year, that would have been his issue with the DMV, and not the court. The conviction stands."

After the jury convicted appellant, the trial court declined to review the magistrate's ruling concerning the 2004 prior, believing there was substantial evidence to support it. But the trial court specifically found the People had proven, beyond a reasonable doubt, that appellant had suffered the prior convictions, including the 2004 conviction for reckless driving under section 23103/23103.5.

### B.     *Applicable Law and Analysis.*

As the People persuasively point out, *People v. Paradise* (1980) 108 Cal.App.3d 364 is applicable here. In that case the defendant, while acting as his own counsel, signed a plea waiver form similar to the one in the present case and entered a plea of guilty. He later moved to withdraw the plea, claiming he had not been properly advised of the risks of self-representation prior to waiving counsel and entering into the plea. (*Id.* at p. 367.) The court ruled that an express advisement as to the risks of self-representation need not appear in the record and no "ritualistic advisement" is required as long as the record as a whole shows that any waiver of the right to counsel was made knowingly and intelligently. (*Id.* at pp. 371-372; see also *People v. Koontz* (2002) 27 Cal.4th 1041, 1070 [in determining the adequacy of admonitions regarding the risks of self-representation, "No particular form of words is required in admonishing a defendant who seeks to waive counsel . . . the test is whether the record as a whole demonstrates that the defendant understood the disadvantages of self-representation . . . ."].)

The record here shows that in 2004 appellant was properly advised and his waiver was knowing and intelligent. Appellant was advised of the consequences of his plea by

both the trial court and his counsel, and he affirmatively indicated he understood the consequences of his plea. Appellant's claim that he was not advised his conviction could be used to enhance future convictions is without merit. Appellant acknowledged in the plea agreement that he was pleading to a reduced charge and admitted he was driving a motor vehicle after ingesting alcohol. Further, the DUI addendum clearly advised, and appellant acknowledged, that because his conviction involved alcohol it would act as one for driving under the influence of alcohol if he had a subsequent offense. This was sufficient. (See *People v. Claire* (1991) 229 Cal.App.3d 647, 652-655 [written warning that reckless driving conviction could be used as a prior in the future, in accordance with section 23103.5, was a sufficient advisement even if prosecutor failed to give explicit oral advisements under the statute].)

It is true that the DUI addendum advised appellant that his driver's license could be suspended from thirty days to six months instead of the required one-year period. But the traffic judgment minutes, signed by appellant's defense counsel on October 12, 2004, show appellant was present and that as a result of the plea, and pursuant to section 13202.5, appellant's right to drive would indeed be suspended for one year. This indicates that despite the statement in the DUI addendum, appellant was aware his license would be suspended for a year. The fact appellant never sought to withdraw his plea during nearly seven years between his plea and the preliminary hearing in this case, and that the one-year suspension was later reduced with his knowledge to a restriction, suggests appellant was fully aware of the consequences of his plea.

Even if we were to conclude appellant was misadvised as to the consequences his conviction would have on his ability to drive, he has failed to show any misadvisement was prejudicial. (See *People v. Wright* (1987) 43 Cal.3d 487, 494-495.) While appellant claims he would not have entered into the plea had he known his ability to drive for one year would be suspended, there is no evidence supporting this claim. Appellant reaped the benefit of pleading guilty to the lesser of three charges while the remaining charges were dismissed, he did not object to the plea when it was taken, and there is no indication he had any viable defense whatsoever that would have led him to risk a trial on the

merits. (See *In re Resendiz* (2001) 25 Cal.4th 230, 253-254, disapproved on another point in *Padilla v. Kentucky* (2010) 559 U.S. 356.)

Finally, we reject appellant's argument that his 2004 conviction should be declared a nullity because the plea agreement shows he pled guilty to "V.C. 23013.5," which is not itself a crime but an enhancement. The record here establishes that appellant was charged with driving on August 14, 2004 while under the influence and with a measurable blood alcohol level. The complaint was then amended to add the charge of section "V.C. 23103(a) per 23103.5," and appellant stated in the plea agreement that he was "pleading to a reduced charge" and admitted he "was driving a motor vehicle after ingesting alcohol" so the other charges could be dismissed. While the charge noted on the plea agreement was technically incorrect, the total record supports a factual basis for the plea. (See *People v. Holmes* (2004) 32 Cal.4th 432, 438, 441-443 [factual basis for a plea need not establish more than a prima facie basis for the charges]; *People v. Mickens* (1995) 38 Cal.App.4th 1557, 1564 [any error in the determination of a factual basis is harmless if the total record supports such finding].)

## DISPOSITION

The judgment is affirmed.

RUBIN, J.

WE CONCUR:

BIGELOW, P. J.

FLIER, J.

13