Filed 7/25/16  P. v. Watkins CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | F070693 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. BF153580A) |
| CASEY JEROME WATKINS, | **OPINION** |
| Defendant and Appellant. | |

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Kern County.  Kenneth C. Twisselman II, Judge.

James F. Johnson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Kathleen A. McKenna and Ian P. Whitney, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]        Before Kane, Acting P.J., Poochigian, J. and Detjen, J.

Appellant Casey Jerome Watkins appeals his convictions for driving with a willful or wanton disregard for safety while fleeing from pursuing police officers (Veh. Code, § 2800.2, subd. (a)) and resisting arrest (Pen. Code, § 148, subd. (a)(1)). Appellant contends the trial court erred in admitting evidence of a prior misdemeanor conviction from 1992, also for driving with a willful or wanton disregard for safety while fleeing from pursuing police officers. For the reasons set forth below, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On February 27, 2014, Bakersfield Police Officer Lukious Sims of the Career Criminal Apprehension Team and his partner, Officer Carl Martin, received a call from California State Parole Agent Chad Greenwood advising that appellant was absconding from parole and requesting assistance in apprehending him. Officers Sims and Martin were driving an unmarked white car which was equipped with red and blue light bars on the windshield and a siren. Parole Agent Greenwood was also in the area, driving a white Chevy Colorado truck. His supervisor, Parole Agent Darrott Johnson, was also present in the area, driving a blue Chevy Colorado truck.

Agent Johnson testified to initially following appellant after seeing him get into a vehicle. Agent Johnson fell off of the pursuit, however, when appellant passed through a green light that changed to red before Agent Johnson could pass. Agent Johnson saw Officers Sims and Martin pull behind appellant's vehicle, but did not see anything else until after appellant was in custody.

Officers Sims testified to finding appellant driving a black Chevy Malibu. Officer Sims initiated a traffic stop, utilizing his lights and sirens. Appellant initially pulled over, but as Officers Sims and Martin approached the back of the Malibu, appellant drove away. A relatively low-speed chase ensued, during which appellant ran several stop signs, ending when appellant substantially increased his speed, lost control of the vehicle, and crashed into a fence.

2

Upon crashing his vehicle, appellant fled on foot. Officer Sims gave chase, yelling "Stop! Police." Appellant jumped a fence and ran into an apartment complex. At some point he stopped, turned around, and took an aggressive stance. Officer Sims pulled out his collapsible baton and told appellant to get on the ground. Appellant complied, but according to Officer Sims, pulled his hands and arms away as Officer Sims attempted to handcuff him. Utilizing force and with assistance from Parole Agent Greenwood, who had arrived on scene, Officer Sims was able to subdue appellant and place him under arrest.

Appellant contested these facts at trial. According to appellant, he never saw a white car utilizing lights and sirens to pull him over and never stopped as a result of such conduct. Rather, while driving to work through a known gang neighborhood, appellant noticed a grayish/blue truck and a red truck following close behind him. Concerned for his safety, appellant made several turns to determine whether he was being followed. When he concluded he was being followed, appellant attempted to flee, crashing his car. He took off on foot, hoping not to be shot by his pursuers, but stopped after a short while when he realized the people following him were police officers. At that point, he voluntarily submitted to their commands by laying on the ground and did not resist being handcuffed. According to appellant, Officer Sims placed a knee on his back and pulled one of his arms up, behind his back, causing him to roll onto his other arm. At that point, Parole Agent Greenwood began hitting him while telling him not to ever run from him.

During his direct examination, appellant admitted to having been convicted of three prior felonies. When later questioned by his counsel on his conduct in this case, the following exchange occurred:

> "[DEFENSE COUNSEL]: Okay. Did you ever notice a white car behind you?
>
> "THE DEFENDANT: No, I did not.

3

"[DEFENSE COUNSEL]:  Did you hear a siren?

"THE DEFENDANT:  No.

"[DEFENSE COUNSEL]:  Did you see flashing lights behind you?

"THE DEFENDANT:  No.

"[DEFENSE COUNSEL]:  What would you have done if you heard the siren?

"THE DEFENDANT:  Of course, pull over.  I've always pulled over.

"[DEFENSE COUNSEL]:  Why would you pull over?

"THE DEFENDANT:  Because I know it's the officer of the law."

At the first break following this testimony, the People made an oral motion to introduce evidence of appellant's prior conviction from 1992 for "a misdemeanor violation of 2800.2," driving with a willful or wanton disregard for safety while fleeing from pursuing police officers.  Appellant's counsel objected, referring to a prior motion in limine to preclude impeachment by character evidence and referencing Evidence Code section 352.  The trial court admitted the evidence, explaining "in considering the 352 factors I do find that the probative value of the 1992 conviction would not be substantially outweighed by the prejudicial effect, it would directly impeach the defendant based on the nature of the prior charge."

Following the trial court's ruling, the following exchange occurred during cross examination:

"[PROSECUTOR]:  Now, you told us that you were driving like this trying to get away from the red trucks because if you knew that it was a law enforcement officer you would have pulled over.

"THE DEFENDANT:  No.  If - - it's not a point if I knew there was officers.  What I'm saying is I didn't know who it was.  I did not know who it was.

4

"[PROSECUTOR]: But if you had known it was an officer, you would have pulled over?

"THE DEFENDANT: If they had flashing lights and they identify themselves, was right there, yes, I would have pulled over.

"[PROSECUTOR]: But in 1992 when officers are following you with their lights and sirens on, you evaded polices officers then; correct?

"THE DEFENDANT: I was driving right behind my girlfriend who was at a party late at night with my kids out there, and I was following her, and the officer's right behind me. This wasn't even, like, 10, 15 seconds. Yes, I pulled over in the middle of the street and they arrested me. No fight, no arguments, no nothing.

"[PROSECUTOR]: But you were convicted of evading police officers in 1992 for that; correct?

"THE DEFENDANT: I accepted a plea deal."

Appellant was subsequently convicted by a jury and sentenced. This timely appeal followed.

## DISCUSSION

Appellant contends the trial court failed to conduct a proper analysis under Evidence Code section 352, arguing the trial court must find a proffered misdemeanor conviction is a crime of moral turpitude in order to admit it.

### *Standard of Review and Applicable Law*

Under Evidence Code section 352, the "court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." In the context of Evidence Code section 352, prejudice refers to evidence that uniquely tends to evoke an emotional bias against a party as an individual and only has slight probative value with regard to the issues. (*People v. Scheid* (1997) 16 Cal.4th 1, 19.)

5

We review the decision to admit evidence under Evidence Code section 352 for an abuse of discretion and will not disturb the ruling unless there is a clear showing the trial court exceeded the bounds of reason, all circumstances considered. (*People v. Martinez* (1998) 62 Cal.App.4th 1454, 1459.)

### *The Trial Court Did Not Abuse Its Discretion*

Appellant insists the trial court was required to determine whether his 1992 misdemeanor conviction was a crime of moral turpitude in order to admit the conviction for impeachment purposes. We do not agree.

Relevant to this discussion, under Evidence Code section 780, evidence may be admitted regarding the credibility of witnesses which bears on either their "character for honesty or veracity" or the "existence or nonexistence of any fact testified to" by them. (Evid. Code, § 780, subds. (e), (i).) It is true, as appellant argues, that evidence of prior misdemeanor convictions offered to impeach the witness's character for honesty or veracity requires proof the conviction was for a crime involving moral turpitude. (Evid. Code, § 787; *People v. Wheeler* (1992) 4 Cal.4th 284, 295 [concluding past criminal conduct amounting to a misdemeanor having some logical bearing on the veracity of a witness is admissible as general impeachment evidence].) But this admissibility requirement is not mandated when the evidence is not offered for impeachment based on one's character for honesty or veracity, but instead offered to disprove a specific fact testified to by the witness. (See Evid. Code, § 787 [excluding evidence of specific incidents of conduct "relevant only as tending to prove a trait of [the witness's] character"].)

"A witness who makes a sweeping statement on direct or cross-examination may open the door to use of otherwise inadmissible evidence of prior misconduct for the purpose of contradicting such testimony." (*Andrews v. City and County of San Francisco* (1988) 205 Cal.App.3d 938, 946.) As an example, in *People v. Cooks* (1983) 141 Cal.App.3d 224 (*Cooks*), the defendant testified he had never owned or possessed a

6

gun. The prosecution properly cross-examined him on this statement by introducing evidence that the defendant had previously pleaded guilty to the misdemeanor offense of possessing a stolen handgun. (*Cooks*, *supra*, 141 Cal.App.3d at p. 324.) Rules such as these serve to ensure a defendant does not seek to mislead a jury by presenting false facts free of any risk of impeachment. (See *People v. Robinson* (1997) 53 Cal.App.4th 270, 282-283.)

This case exemplifies why such a rule exists. On direct, and again on cross‑examination, appellant testified that he would have certainly stopped for the officers if only he had seen their lights and heard their sirens. This testimony was presented in support of his defense that Officers Sims and Martin had not followed him in a white car with their lights and siren on. Yet appellant had previously pleaded guilty to a crime which required, as an element of the offense, evading or otherwise attempting to elude a pursuing peace officer's motor vehicle when the "vehicle is exhibiting at least one lighted red lamp visible from the front and the person either sees or reasonably should have seen the lamp" and the "vehicle is sounding a siren." (Veh. Code, §§ 2800.1, subds. (a)(1)-(2), 2800.2, subd. (a) [rendering criminal a willful or wanton disregard for safety when "a person flees or attempts to elude a pursuing peace officer in violation of [Vehicle Code s]ection 2800.1"].) The People were certainly permitted to impeach appellant on his affirmative claims with conflicting past conduct.

With respect to the trial court's decision to admit the evidence under Evidence Code section 352, we see no abuse of discretion. The evidence was relevant and highly probative with respect to appellant's affirmative claim he would have stopped. (*People v. Reyes* (1976) 62 Cal.App.3d 53, 65.) While introduction of a past criminal conviction, more than 10 years old, does carry with it some prejudice to appellant, this prejudice was not undue and was further minimized by the fact that appellant had previously admitted to three substantially more serious felonies on direct examination.

**DISPOSITION**

The judgment is affirmed.