Filed 3/12/21  P. v. Savage CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B304404 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. A146871-03) |
| v. | |
| BOBBY RAY SAVAGE, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Michael V. Jesic, Judge.  Reversed and remanded with directions.

Susan L. Jordan, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior

Assistant Attorney General, Idan Ivri and Rene Judkiewicz, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Bobby Ray Savage, convicted in 1984 of first degree felony murder, mayhem and assault with a caustic chemical, appeals the postjudgment order denying his petition for resentencing under Penal Code section 1170.95.[1]  Savage contends the superior court's ruling he was ineligible for resentencing as a major participant in the underlying offense of mayhem who had acted with reckless indifference to human life was impermissibly based on factfinding conducted prior to issuance of an order to show cause and evidentiary hearing.  The Attorney General agrees the court should not have engaged in factfinding on the reckless indifference question without issuing an order to show cause.  Nonetheless, the Attorney General urges us to affirm the order based on an alternate ground:  Savage's jury found true on the mayhem and aggravated assault counts that Savage had personally inflicted great bodily injury on the victim (§ 12022.7), which necessarily meant it found Savage was the actual killer, making him ineligible for resentencing as a matter of law.

Although we disagree with Savage's response to the Attorney General—he contends our review on appeal must be limited to determining whether the trial court's reason for denying the petition was correct—in the superior court the prosecutor expressly stated she did not intend "to exploit any ambiguity in the evidence" concerning Savage's role in the crime and, therefore, was not relying on an argument Savage was the

_____

[1]     Statutory references are to this code.

2

actual killer in opposing his petition for resentencing. Under these circumstances, any contention Savage was the actual killer, like the argument he was a major participant in the mayhem and had acted with reckless indifference to human life, must be addressed following issuance of an order to show cause.

**FACTUAL AND PROCEDURAL BACKGROUND**

1. *Savage's Conviction for Felony Murder*

    a. *The attack*

Richard Gilman and his fiancée Patricia Worrell had an acrimonious breakup. In late July 1980 Gilman, after telling a prostitute in Las Vegas that he was looking for a "hit man" to "mess up" a woman in Los Angeles, met and hired Savage, the prostitute's pimp, to attack and disfigure Worrell. Gilman agreed to pay Savage $1,500, advancing $750 as an initial payment.

Savage drove to Los Angeles and went to Worrell's home on several occasions, but did not attack Worrell because there were always other people around when he was there. Gilman was upset the job had not been completed and threatened Savage. Savage then enlisted Ricardo Robinson to do the job with him. Robinson contacted Gilman, and Gilman agreed to pay Robinson $1,000 to throw lye or acid on Worrell.

On August 14, 1980 Savage and Robinson drove to Worrell's home from Las Vegas. They brought with them a glass jar in which they had mixed the contents of a can of drain cleaner (later determined to contain sodium hydroxide or lye) and water. When they arrived, Savage told Robinson he would turn on the headlights of the car parked in the driveway, which Robinson could then use as a ruse to get Worrell to open the front door. Savage handed Robinson the jar with the caustic liquid. As planned, Worrell opened the door in response to being told her

3

car's lights had been left on. Robinson threw the liquid in Worrell's face.

Immediately after the attack Worrell was rushed to the hospital, suffering from burns to her face and upper body. In addition, Worrell ingested some of the caustic liquid, which burned through her esophagus, causing a massive arterial hemorrhage. She died 10 days after being hospitalized.

While in the hospital Worrell told her son a Black man had knocked on her door and threw the liquid in her face. She made a similar statement to the detective investigating the case. Robinson is Black; Savage is White. In addition, evidence at trial established that Robinson had severe burns on his hands immediately after the incident, consistent with coming into contact with a caustic liquid.

b. *Trial*

Savage, Robinson and Gilman were all charged with first degree murder with special circumstance allegations the murder had been perpetrated for financial gain and by torture, as well as counts charging mayhem, assault with a caustic substance and conspiracy to commit those offenses. Savage's case was severed from the other two men's (see *People v. Robinson* (1997) 53 Cal.App.4th 270, 275; *People v. Gilman* (1984) 156 Cal.App.3d 760, 762, fn. 1), and he was tried on a theory of felony murder as an aider and abettor of the planned mayhem of Worrell.

Savage was convicted of first degree murder, mayhem and assault with a caustic substance. The jury also found true the special allegations that Savage had inflicted great bodily injury during the commission of mayhem and the aggravated assault. He was sentenced to an indeterminate state prison term of

4

25 years to life for murder. Sentences on the other two counts and the related enhancements were stayed.

2. *Savage's Section 1170.95 Petition and the Prosecutor's Responses*

Savage, representing himself, filed a petition for resentencing pursuant to section 1170.95 on November 26, 2018. He attached as exhibits to the petition a portion of the trial testimony of Worrell's treating physician, who explained ingesting a caustic liquid is likely to cause death in only 1 percent of cases, that is, in his opinion throwing lye in someone's face is not likely to cause death. Also attached was a letter from Savage's trial counsel in support of granting Savage parole, which explained the case had been tried as a felony murder, not on the theory Savage and Robinson had intended to kill Worrell.

Counsel was appointed to represent Savage. The prosecutor and Savage's counsel initially filed briefs regarding the constitutionality of section 1170.95, an issue subsequently abandoned by the district attorney's office. Savage's counsel also submitted a memorandum asserting Savage had made a prima facie showing of eligibility for resentencing, as required for issuance of an order to show cause pursuant to section 1170.95, subdivision (c).

On November 5, 2019, after hearing argument directed to the prosecutor's contention Savage could still be convicted of murder under amended section 188 on a theory of implied malice, the court invited the parties to submit supplemental briefing on that issue. Savage's counsel filed two additional memoranda, and the prosecutor filed a supplemental opposition to the petition. Savage's counsel identified four questions for the court to resolve: (1) who threw the caustic chemical; (2) was Savage an aider and

abettor who had acted with intent to kill; (3) may the People raise new theories of liability during an eligibility hearing, specifically, implied malice; and (4) had Savage acted with reckless indifference to human life?

In her opposition the prosecutor, after acknowledging Savage's jury had been instructed, and he had been convicted of murder, solely on the theory of first degree felony murder in the commission of mayhem, informed the court it was unnecessary to consider the first two questions Savage raised. The prosecutor stated the record of conviction contained conflicting evidence whether Savage was the actual killer, noting there was "compelling evidence that Robinson was the direct perpetrator," but the jury had found true the special allegation that Savage had personally inflicted great bodily injury on the victim. The brief continued, "The People do not intend to exploit any ambiguity in the evidence, and hereinafter assume arguendo that he was not the actual killer for the purposes of this response." In addition, to decide whether Savage had established a prima facie case of eligibility for resentencing, the prosecutor contended, "it is unnecessary to determine whether or not Petitioner acted with the intent to kill" because he had "acted with reckless indifference and/or conscious disregard for human life" and, therefore, could be "convicted of second degree murder with malice aforethought."

3. *The Trial Court's Ruling*

At the continued hearing on January 14, 2020 the court confirmed its understanding the prosecutor was not contending Savage had been Worrell's actual killer. Savage's counsel argued, "[Savage is] obviously not the person who throws the chemical because, if he was, then he's the actual killer here. And I don't

6

believe that's the People's position.  And I set forth in my moving papers why it's clear that he is not the person who throws the chemical."  The court responded, "I accept that.  And I don't think [the prosecutor] is arguing any different."  The prosecutor agreed, "No, I'm not. . . .  I do think there is some ambiguity in the record."  The court again stated, "And I'm willing to accept in this proceeding that he was not the actual killer."

The court thereafter indicated its tentative ruling was to find Savage could have been convicted as a major participant in the commission of mayhem who had acted with reckless indifference to human life, making him ineligible for resentencing.  Savage's counsel conceded Savage had been a major participant in the underlying felony, but argued there was no evidence in the record indicating Savage and Robinson had intended to kill Worrell, rather than disfigure her, or that Savage and his crime partners had discussed throwing the caustic liquid in Worrell's face.  In addition, Savage's counsel emphasized the medical testimony regarding how unlikely it was that an attack as perpetrated in this case would cause the victim's death.

The court denied the petition, finding Savage had failed to establish a prima facie case for resentencing.  Explaining its reasoning, the court stated, "I see this very similar to shooting someone in the leg and saying, 'Well, I only wanted to hurt them. I didn't want to kill them.'  To throw lye in someone's face, I can't even imagine that you could do that without thinking that the person could die. . . .  I have no doubt when they went up that they went up with the intent to maim her.  But I also believe they went up fully knowing that whatever happened, happened, and one of those possibilities was definitely that she could die from this.  Not that that's what their actual intent was at the time was

to kill her, but that they knew that that was a possibility. They didn't care. So I do find that he was not only a major participant but acted with reckless indifference to human life."

## DISCUSSION

1. *Senate Bill No. 1437 and the Section 1170.95 Petition Procedure*

As discussed in a rapidly expanding number of appellate decisions, Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Stats. 2018, ch. 1015) (Senate Bill 1437), effective January 1, 2019, significantly modified the law relating to accomplice liability for murder. (*People v. Gentile* (2020) 10 Cal.5th 830, 839, 842-43 (*Gentile*).) New section 188, subdivision (a)(3), added by the legislation, eliminates the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder by providing, "Except as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." (See *Gentile*, at p. 848 [Senate Bill 1437 eliminates natural and probable consequences liability for murder regardless of degree].) New section 189, subdivision (e), limits the felony-murder exception to the malice requirement, permitting a murder conviction for a death that occurred during the commission of certain serious felonies only when the defendant was the actual killer, aided or abetted the underlying felony with the intent to kill, or was a major participant in the felony and acted with reckless indifference to human life.[2]

---

[2] Section 189, subdivision (e), provides with respect to a participant in the perpetration or attempted perpetration of a

8

Senate Bill 1437 also authorized, through new section 1170.95, an individual convicted of felony murder or murder under a natural and probable consequences theory to petition the sentencing court to vacate the conviction and be resentenced on any remaining counts if he or she could not have been convicted of murder because of Senate Bill 1437's changes to the definition of the crime.  (See *Gentile*, *supra*, 10 Cal.5th at p. 859.)  The petition must include a declaration by the petitioner that he or she is eligible for relief under section 1170.95 and a statement whether the petitioner requests the appointment of counsel.  (§ 1170.95, subd. (b)(1); see *People v. Verdugo* (2020) 44 Cal.App.5th 320, 326-327 (*Verdugo*), review granted Mar. 18, 2020, S260493.)

If the petition contains all required information, section 1170.95, subdivision (c), prescribes a process for the court to determine whether an order to show cause should issue:  "The court shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section.  If the petitioner has requested counsel,

---

felony listed in section 189, subdivision (a), in which a death occurs—that is, as to those crimes that provide the basis for the charge of first degree felony murder—that an individual is liable for murder "only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2."

9

the court shall appoint counsel to represent the petitioner. The prosecutor shall file and serve a response . . . and the petitioner may file and serve a reply. . . . If the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause."

Once the order to show cause issues, the court must hold a hearing to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts. (§ 1170.95, subd. (d)(1); see *Verdugo*, *supra*, 44 Cal.App.5th at p. 327, review granted.) At the hearing the prosecution has the burden of proving beyond a reasonable doubt that the petitioner is ineligible for resentencing. (§ 1170.95, subd. (d)(3); *People v. Rodriguez* (2020) 58 Cal.App.5th 227, 230, review granted Mar. 10, 2021, S266652; but see *People v. Duke* (2020) 55 Cal.App.5th 113, 123, review granted Jan. 13, 2021, S265309 [prosecutor must only prove a reasonable jury could find the defendant guilty of murder with the requisite mental state; "[t]his is essentially identical to the standard of substantial evidence"].)[3] The prosecutor and petitioner may rely on the record of conviction or offer new or additional evidence to meet

_____

[3]     In granting review in *People v. Duke*, S265309, the Supreme Court limited the issue to be briefed and argued to the following: "Can the People meet their burden of establishing a petitioner's ineligibility for resentencing under Penal Code section 1170.95, subdivision (d)(3) by presenting substantial evidence of the petitioner's liability for murder under Penal Code sections 188 and 189 as amended by Senate Bill No. 1437 (Stats. 2018, ch. 1015), or must the People prove every element of liability for murder under the amended statutes beyond a reasonable doubt?"

10

their respective burdens.  (See *People v. Tarkington* (2020) 49 Cal.App.5th 892, 898-899, review granted Aug. 12, 2020, S263219; *People v. Drayton* (2020) 47 Cal.App.5th 965, 981; *People v. Lewis* (2020) 43 Cal.App.5th 1128, 1136, review granted Mar. 18, 2020, S260598.)

     2. *Savage Made a Prima Facie Showing He Is Entitled to Relief Under Section 1170.95*

It is undisputed Savage was convicted of Worrell's murder under a felony-murder theory.  In his opening brief in this court Savage makes a persuasive argument he satisfied the other requirement for issuance of an order to show cause under section 1170.95, subdivision (c)—that is, he made a prima facie showing he could not now be convicted of felony murder because of Senate Bill 1437's changes to sections 188 and 189. Specifically, Savage demonstrated, although he had been a major participant in the attack on Worrell, there was conflicting evidence in the trial record whether in aiding and abetting that crime he had acted with reckless indifference to his victim's life. (See, e.g., *People v. Drayton, supra,* 47 Cal.App.5th at p. 968 ["[T]he trial court should accept the assertions in the petition as true unless facts in the record conclusively refute them as a matter of law. . . .  In assessing the petitioner's prima facie showing, the trial court should not weigh evidence or make credibility determinations"]; *People v. Lewis, supra,* 43 Cal.App.5th at p. 1168 [to defeat the petitioner's prima facie showing, the record of conviction must establish as a matter of law that petitioner is not entitled to relief].)[4]

---

[4]    The nature and scope of the prima facie review under section 1170.95, subdivision (c), following briefing by the

In the respondent's brief the Attorney General agrees the superior court erred in refusing to accept Savage's allegations of his subjective intent for purposes of evaluating his prima facie case for relief, acknowledging, "[T]he court should not have engaged in factfinding on the reckless indifference question without issuing an OSC." Nonetheless, arguing a correct outcome must be affirmed on appeal even if the superior court employed incorrect reasoning, the Attorney General contends denial of Savage's petition was proper in light of the true finding that Savage had personally inflicted great bodily injury during the attack on Worrell, which necessarily means the jury found Savage was the actual killer. We decline the Attorney General's invitation to decide the case on a ground the prosecutor expressly disclaimed as a basis to deny the petition without an evidentiary hearing.

As the Attorney General's argument suggests, if the record of conviction before the superior court established a properly instructed jury found the petitioner had personally inflicted the

_____

prosecutor and counsel for petitioner "is equivalent to the familiar decisionmaking process before issuance of an order to show cause in habeas corpus proceedings, which typically follows an informal response to the habeas corpus petition by the Attorney General and a reply to the informal response by the petitioner. . . . 'The court must issue an order to show cause if the petitioner has made a prima facie showing that he or she is entitled to relief. In doing so, the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause.'" (*Verdugo, supra*, 44 Cal.App.5th at p. 328, review granted.)

injury that caused the victim's death, and no legal impediment precluded reliance on that finding, the court could properly deny the section 1170.95 petition without issuing an order to show cause. (*Verdugo, supra,* 44 Cal.App.5th at p. 330, review granted [the record of conviction might include information that establishes the petitioner is ineligible for relief as a matter of law—"for example, a petitioner who admitted being the actual killer as part of a guilty plea or who was found to have personally and intentionally discharged a firearm causing great bodily injury or death in a single victim homicide"]; accord, *People v. Falcon* (2020) 57 Cal.App.5th 272, 275, review granted Jan. 27, 2021, S266041; *People v. Cornelius* (2020) 44 Cal.App.5th 54, 58, review granted Mar. 18, 2020, S260410); *People v. Lewis, supra,* 43 Cal.App.5th at pp. 1139-1140, review granted; see also *People v. Allison* (2020) 55 Cal.App.5th 449, 461 ["[n]othing in the language of section 1170.95 suggests it was intended to provide redress for allegedly erroneous prior factfinding"].) And, contrary to Savage's argument in his reply brief, we generally affirm a trial court's ruling if correct on any ground, even if the court's reasoning was incorrect. (See, e.g., *People v. Brooks* (2017) 3 Cal.5th 1, 39; *People v. Chism* (2014) 58 Cal.4th 1266, 1295, fn. 12.) But these principles are not applicable here for three related reasons.

First, although the section 12022.7 great bodily injury enhancement is properly imposed only on defendants "who directly perform the act that causes the physical injury to the victim" (*People v. Cole* (1982) 31 Cal.3d 568, 579), the jury instructions given in Savage's case with respect to that enhancement were not before the superior court and are not part of the record on appeal, even as augmented at the request of the

13

Attorney General.[5]  Accordingly, there is no way to tell if the jury
was properly instructed or if, like the jury in *Cole*, it was told the
enhancement could be found true if Savage had aided and
abetted the infliction of injury even though he did not personally
inflict it.  (See *Cole,* at p. 577.)  The possibility a legally incorrect
instruction was given is underscored by the prosecutor's
acknowledgement there was compelling evidence at Savage's trial
that Robinson, not Savage, had thrown the caustic liquid.
(Savage, unlike Robinson and Gilman, apparently did not appeal
his convictions.  Thus, there is no appellate decision reviewing
the enhancement instructions or findings.)[6]

Second, in *In re Sakarias* (2005) 35 Cal.4th 140, 155-156
the Supreme Court held, in cases involving separate trials of
alleged confederates, "fundamental fairness does not permit the
People, without a good faith justification, to attribute to
two defendants, in separate trials, a criminal act only
one defendant could have committed.  By doing so, the state
necessarily urges conviction or an increase in culpability in one of
the cases on a false factual basis, a result inconsistent with the
goal of the criminal trial as a search for truth."  (See *id.* at

---

[5]     We granted the Attorney General's request to augment the
record with the verdict forms finding Savage guilty of mayhem
and aggravated assault and finding true the personal infliction
enhancements.  The related jury instructions were not provided.

[6]     One of Cole's jurors, in a posttrial declaration that Savage
then attached to his section 1170.95 petition, stated, "Everyone in
the jury room saw the same special allegation at the bottom of all
the verdict forms regarding the personal infliction of great bodily
injury, and thought it was just meaningless legal jargon and felt
it just went along with a verdict of guilty on each count."

pp. 159-160 ["the People's use of irreconcilable theories of guilt or culpability, unjustified by a good faith justification for the inconsistency, is fundamentally unfair"].) Not only was there compelling evidence in Savage's trial that Robinson had thrown the lye, but also there is a strong indication the People made that argument during Robinson's separate trial. (See *People v. Gilman*, *supra*, 156 Cal.App.3d at p. 762 [Robinson's jury found him guilty of conspiracy to commit mayhem and assault with a caustic substance and found true as to the conspiracy count the section 12022.7 great bodily injury enhancement].) Based on the limited record before us, it is impossible to conduct what the Attorney General properly describes as "a complex analysis of whether the theories in the two trials are irreconcilable and whether the prosecution acted in bad faith" to conclude the section 12022.7 enhancement was improperly pleaded and argued in Savage's trial in violation of *In re Sakarias*, *supra*, 35 Cal.4th 140. What we can determine is that this limited record does not clearly establish Savage's ineligibility for resentencing relief under section 1170.95 as a matter of law.

The Attorney General attempts to finesse the issue by asserting a challenge by Savage to the section 12022.7 enhancement as imposed in violation of *In re Sakarias*, *supra*, 35 Cal.4th 140 must be raised in a petition for writ of habeas corpus, not under section 1170.95. But that mischaracterizes Savage's argument, which is that the enhancement finding does not necessarily mean he could be found guilty of murder under amended section 188 and 189, not that the enhancement should be reversed and his sentence modified. In this respect Savage's argument is similar to petitioners who have argued in their section 1170.95 petitions that a felony-murder special-

15

circumstance finding under section 190.2, subdivisions (a)(17) and (d), made prior to the Supreme Court's decisions in *People v. Banks* (2015) 61 Cal.4th 788 and *People v. Clark* (2016) 63 Cal.4th 522 clarifying the requirements for such a finding, does not preclude relief as a matter of law. As we recently held in *People v. Harris* (Feb. 16, 2021, B300410) __ Cal.App.5th ___, ___, [2021 Cal.App. Lexis 127] such a challenge to the purported preclusive effect of a jury finding may properly be raised in a section 1170.95 petition. (Accord, *People v. York* (2020) 54 Cal.App.5th 250, 262, review granted Nov. 18, 2020, S264954; but see *People v. Murillo* (2020) 54 Cal.App.5th 160, 168, review granted Nov. 18, 2020, S264978; *People v. Galvan* (2020) 52 Cal.App.5th 1134, 1142-1143, review granted Oct. 14, 2020, S264284.)

Finally, there is something fundamentally troubling about the prosecutor expressly withdrawing a potential issue before the superior court only to have the Attorney General contend on appeal it is a proper basis for us to deny an evidentiary hearing to a section 1170.95 petitioner. Under the circumstances here that argument is particularly pernicious. As discussed, the prosecutor did not simply overlook the potential significance of the great bodily injury enhancement to Savage's eligibility for relief, but affirmatively identified it and expressly declared she was not relying upon it. As a result, Savage's counsel did not have the opportunity to marshal evidence to argue either that the jury had been misinstructed or that *In re Sakarias* error had occurred.

## DISPOSITION

The order denying Savage's section 1170.95 petition is reversed, and the matter remanded with directions to issue an order to show cause and to proceed consistently with section 1170.95, subdivision (d).


PERLUSS, P. J.


We concur:


SEGAL, J.


FEUER, J.